IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**RICHARD FERREER,**

    Plaintiff,

v.                                                                        Civil Action No. **3:25CV311 (RCY)**

**LONG,** *et al.***,**

    Defendants.

## MEMORANDUM OPINION

Richard Ferreer, a Virginia inmate proceeding *pro se*, filed this civil action pursuant to 42 U.S.C. § 1983.[1] The matter is before the Court on a Motion to Dismiss filed by Defendants Long, White, Waller, Farina, Blount, and Dorset[2] (ECF No. 10), as well as the Court's screening obligations under 28 U.S.C. § 1915A. The Court provided Ferreer with notice of the Motion to Dismiss pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), *see* Order, ECF No. 13, but Ferreer did not file any opposition. For the reasons set forth below, the Motion to Dismiss will be GRANTED; however, because two claims will remain pending against Defendant Floreska, who has not appeared or moved to dismiss the Complaint, the action as a whole will not be dismissed at this time.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Attorney General of Virginia accepted service on behalf of the moving Defendants but not Defendants Floreska, Perez, or "Unknown Staff," who were also named as Defendants in the Complaint. *See* ECF No. 1, at 1. By separate Memorandum Order, the Court directed Ferreer to show good cause for his failure to serve "Unknown Staff" within ninety days as required by Federal Rule of Civil Procedure 4(m). ECF No. 18. By yet another Memorandum Order, the Court directed the United States Marshals Service to effect service on Defendant Floreska at the address recently provided by the Attorney General for the Commonwealth of Virginia. *See* ECF No. 17. Finally, as discussed below, Ferreer's claim against Perez will be dismissed for failure to state a claim.

### I. STANDARD OF REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). Under the first standard, "a patently insubstantial complaint may be dismissed, for example, for want of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Neitzke*, 490 U.S. at 327 n.6 (citations omitted). The burden then rests with the petitioner, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Under Rule 12(b)(1) review, a complaint may be deemed deficient on its face if it fails to state a claim upon which subject matter jurisdiction can lie. *Id.* (citing *Adams*, 697 F.2d at 1219).

The second standard for "failure to state a claim" is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see*

*also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). For a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the *pro se* plaintiff's advocate and develop, *sua sponte*, statutory and constitutional claims that the plaintiff failed to clearly raise on the face of the complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. ALLEGATIONS AND CLAIMS

Ferreer alleges[3] that, on April 30, 2023, unknown State Farm Correctional Center ("SFCC") officials escorted him to the restricted housing unit ("RHU"), where he was left for five hours. Compl. 5, ECF No. 1. He claims to have been placed in the RHU at the behest of Defendant White, "without any due process" and not based on any disciplinary infraction. *Id.* This, Ferreer claims, was just one example of Defendant White "ha[ving] it out for [him]." Pl.'s Aff. 1, ECF No. 1-1. White had also allegedly "convince[d] Captain Dorset to get Lt. Perez, her immediate supervisor, to terminate [Ferreer's] job." *Id.*

The next day, May 1, 2023, Ferreer apologized to Defendant White, stating that he "was sorry for anything [he] may ha[ve] done to upset her in the past" and that he "give[s] up." Compl. 5. He further stated that "putting [him] in the RHU shower for five (5) hours really and truly messed with [him] mentally." *Id.* In response, Defendant White allegedly "called the Goon Squad . . . to escort [Ferreer] back to RHU." *Id.*

While walking, Ferreer requested to speak to Defendant Dorset, who was the Watch Commander at the time. *Id.* Although Defendant Blount "acknowledged [Ferreer's] request and said that it shouldn't be a problem," Defendant Floreska "quickly refused and said that [Ferreer] wouldn't be speaking with the Watch Commander." *Id.* at 5–6. Without provocation, Defendant Floreska then "attempted to trip [Ferreer]," who was handcuffed behind his back, injuring both Ferreer and himself in the process. *Id.*

After an unstated amount of time in SFCC's RHU, during which he was deprived of "shower shoes," Ferreer was transferred to Augusta Correctional Center ("ACC"). *Id.* at 6. After

---

[3] The Court corrects the capitalization, punctuation, and spelling in the quotations from Ferreer's submissions. The Court employs the pagination assigned by the CM/ECF docketing system.

4

two weeks at ACC, Ferreer was placed in the RHU at that facility. *Id.* ¶ 22. On June 19, 2023, Ferreer received a notice of confiscation—authorized by Defendant Farina at SFCC— regarding several of his personal items that had not accompanied him from SFCC to ACC, including his beard trimmers, gym shorts, bath towel, sneakers, prayer oils, mail, and family photos. *Id.* at 7. He alleges that Defendant Farina "trashed" this property without notice, ignoring his requests that the items be sent to members of his family. *Id.*

The Complaint does not contain a clear list of Ferreer's proposed claims for relief. Rather, throughout its pages, the Complaint identifies in a piecemeal fashion a host of legal claims that are sometimes undeveloped, unclear, or even logically inconsistent with other claims. *See id.* at 1–2, 9, 10–12. It also contains allegations regarding Ferreer's period of confinement at ACC, *see, e.g.*, *id.* at 6–7; Pl.'s Aff. 3, despite failing to name any ACC officials as Defendants in this action.[4] As a result, compiling a list of Ferreer's claims for relief required a searching review of the Complaint. Having conducted such a review, the Court concludes that Ferreer seeks to raise the following claims:

| | |
|---|---|
| Claim One: | Defendants Floreska and Blount violated Ferreer's Eighth Amendment rights by utilizing "excessive force against a Plaintiff who was restrained from behind, without need or provocation, . . . maliciously and sadistically." Compl. 9. |
| Claim Two: | Defendant Floreska committed the tort of assault and battery by using excessive force against Ferreer. *Id.* at 10. |
| Claim Three: | Defendant Blount violated Ferreer's Eighth Amendment rights by "st[anding] by and allow[ing] Defendant Floreska to assault [him]." *Id.* at 8. |
| Claim Four: | Defendants White and Blount committed the tort of assault and battery by failing to intervene when Defendant Floreska used force on Ferreer. *Id.* at 9. |

---

[4] To the extent Ferreer wishes to seek relief for any alleged violation of his rights at ACC, he must file a new lawsuit in the United States District Court for the Western District of Virginia, the district in which ACC is located. *See* 28 U.S.C. §§ 127, 1391.

5

| | |
|---|---|
| Claim Five: | Defendants White, Long, and Dorset violated Ferreer's Eighth Amendment rights by "fail[ing] to respond reasonably to [Ferreer's] physical abuse upon notice thereof and for the number of hours Plaintiff spent in the shower (5)." *Id.* at 11. |
| Claim Six: | Defendant Floreska violated Ferreer's rights under the Fourteenth Amendment by "filing . . . a false disciplinary report/charge" against him. *Id.* |
| Claim Seven: | Defendants White, Long, and Dorset violated Ferreer's rights by "conspir[ing] to . . . transfer him from SFCC to ACC without a proper [hearing] and property." *Id.* at 8. |
| Claim Eight: | Defendants Waller and Farina violated Ferreer's rights under the First Amendment when they retaliated against him by destroying his personal property. *Id.* at 2, 6–7, 9. |
| Claim Nine: | Defendants Waller and Farina violated Ferreer's rights under the Fourteenth Amendment by destroying his personal property without first providing due process. *Id.* at 2, 7. |
| Claim Ten: | Defendants committed the tort of negligence. *Id.* at 2. |
| Claim Eleven: | Defendant Perez violated Ferreer's rights under the Fourteenth Amendment by terminating his employment at SFCC. Pl.'s Aff. 1. |

Ferreer seeks declaratory relief and monetary damages. Compl. 10–12.

### III.   ANALYSIS

#### A.  Claims One through Four – Alleged Use of Force

##### 1.  Claim One – Excessive Force (Defendants Floreska and Blount)

In Claim One, Ferreer asserts that Defendants Floreska and Blount violated his rights under the Eighth Amendment by utilizing excessive force upon him. Compl. 9. The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. amend. VIII. To state a legally sufficient Eighth Amendment claim, an inmate must set out facts plausibly alleging that: (1) objectively, he suffered a deprivation that "was 'sufficiently serious,' and (2) subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th

6

Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson*, 501 U.S. at 298–300 (1991)). "What must be [alleged] with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

"An inmate's claim of excessive force involves both an objective and a subjective component." *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021). "The objective component measures the nature of the force employed, asking whether that force 'was sufficiently serious to establish a cause of action.'" *Id.* (quoting *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019)). "This is not a high bar; *de minimis* or trivial force is not enough, but anything more will suffice." *Id.* (emphasis added) (quoting *Brooks*, 924 F.3d at 112). "[T]he subjective component . . . [asks] whether the officers acted with a 'sufficiently culpable state of mind,'" that being "wantonness in the infliction of pain." *Id.* (citations omitted). Whether such wantonness can be established "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (internal quotation marks omitted). To determine an officer's state of mind, courts consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Iko*, 535 F.3d at 239 (internal quotation marks omitted) (quoting *Whitley*, 475 U.S. at 321).

Here, the Court is satisfied that the Complaint states a viable Eighth Amendment Claim against Defendant Floreska, who allegedly injured Ferreer's back when he, "unprovoked, attempted to trip [Ferreer] and toss [him] onto his face" while Ferreer was handcuffed behind his back. *See* Compl. 5–6. These facts allow for an inference that Defendant Floreska wantonly used force upon Ferreer when no force was required. Conversely, however, the Complaint fails to state a viable excessive force claim against Defendant Blount, who is not alleged to have used any force whatsoever while escorting Ferreer to SFCC's RHU.

Consistent with the above, although Claim One will be permitted to proceed against Defendant Floreska, Claim One will be DISMISSED as to Defendant Blount.

2. Claim Two – Assault and Battery (Defendant Floreska)

In Claim Two, Ferreer asserts that Defendant Floreska's use of force also amounted to assault and battery under Virginia state law. Compl. 10. Under Virginia law, an assault is "an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003) (citation omitted). "[B]attery is an unwanted touching which is neither consented to, excused, nor justified[.]" *Id.* (citations omitted). "A legal justification for the act being complained of will defeat an assault or battery claim." *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009) (citation omitted). Thus, to prevail on claims of assault and battery, a party must be able to demonstrate that the opposing party engaged in a "wrongful act" that "lack[s] of justification or excuse." *McLenagan v. Karnes*, 27 F.3d 1002, 1009 (4th Cir. 1994) (citation omitted).

Here, because the Court has already found that the Complaint states an excessive force claim against Defendant Floreska, it finds that the Complaint also states a viable assault and battery

8

claim against him. *See Johnson v. Dep't of Alcoholic Beverage Control*, No. 3:15-cv-00055, 2016 WL 7235836, at *8 (W.D. Va. Dec. 13, 2016) ("[B]ecause he has pled a plausible claim for excessive force, Johnson has laid the factual predicate to support his assault and battery claims." (citing *Burruss v. Riley*, 192 F. Supp. 3d 655, 666 (W.D. Va. 2016); *Smith v. Ray*, 855 F. Supp. 2d 569, 583 (E.D. Va. 2012))). Accordingly, Claim Two will be permitted to proceed against Defendant Floreska.

      3. Claim Three – Bystander Liability (Defendant Blount)

In Claim Three, Ferreer alleges that Defendant Blount violated his rights by failing to intervene when Defendant Floreska used excessive force upon him. Compl. 8. This claim arises under a theory of bystander liability, which attaches where an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 202, 204 (4th Cir. 2022).

Here, the Complaint fails to satisfy the second element of a bystander liability claim. Indeed, although the Complaint alleges that Defendant Blount was present during Defendant Floreska's use of force, it does not permit an inference that Defendant Blount had any "reasonable opportunity to prevent the harm." *Id.* Rather, the Complaint alleges that Defendant Floreska's use of force was "unprovoked" and that, following the incident, Ferreer was "placed in RHU without any other injuries." Compl. 6. In other words, the Complaint alleges that Defendant Floreska unexpectedly used force on Ferreer and that the use of force was brief, leaving Defendant Blount no true opportunity to intervene. Accordingly, Claim Three will be DISMISSED. *See Johnson*, 2016 WL 7235836, at *2, 7 (W.D. Va. Dec. 13, 2016) (dismissing bystander liability claim against

officer who had merely witnessed other officers slam an arrestee on the ground "[w]ithout provocation" (citing *Randall*, 302 F.3d at 203)).

    4. Claim Four – Assault and Battery (Defendants White and Blount)

In Claim Four, Ferreer alleges that Defendants White and Blount "fail[ed] to intervene" against Defendant Floreska's use of force against him, thereby committing "the tort of assault and battery." Compl. 9. By framing this claim as a failure to intervene, Ferreer tacitly concedes that neither White nor Blount took any action to "cause either harmful or offensive contact with" Ferreer, let alone actually engaged in "an unwanted touching" of Ferreer. *See Koffman*, 574 S.E.2d at 261; *Unus*, 565 F.3d at 117. Accordingly, the Complaint fails to state viable assault and battery claims against these Defendants, and Claim Four will be DISMISSED.

**B. Claim Five – Conditions of Confinement (Defendants White, Long, Dorset)**

In Claim Five, Ferreer asserts that Defendants White, Long, and Dorset violated his rights under the Eighth Amendment by "fail[ing] to respond reasonably to [Ferreer's] physical abuse upon notice thereof and for the number of hours Plaintiff spent in the shower (5)." Compl. 11. As stated above, an inmate seeking relief under the Eighth Amendment must satisfy two prongs—one objective, one subjective. *See Johnson*, 145 F.3d at 167 (quoting *Wilson*, 501 U.S. at 298). As applied to a conditions of confinement claim, an inmate must allege facts that plausibly show: "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (internal citation omitted) (citing *Wilson*, 501 U.S. at 301–03). Deliberate indifference requires the plaintiff to allege facts plausibly asserting that a particular defendant actually knew of, and disregarded, a substantial risk of serious harm to the plaintiff's person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will

not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

The Complaint's allegations that Defendants White, Long, and Dorset failed to appropriately address his assault or his conditions of confinement in SFCC's RHU—where Ferreer was allegedly deprived of hygienic items such as "shower shoes," Compl. 6—fail to satisfy either the objective or subjective elements of an Eighth Amendment claim. First, the deprivation of shower shoes is not a sufficiently serious deprivation to support an Eighth Amendment claim. *See Puranda v. Kellett*, No. 3:10cv336-HEH, 2011 WL 6742498, at *4 (E.D. Va. Dec. 22, 2011) (dismissing Eighth Amendment claim based on denial of shower shoes, noting that such articles "are not a basic human need" and that the complaint had not "allege[d] facts that plausibly suggest[ed] Defendants were aware that the failure to promptly provide [plaintiff] with shower

11

shoes posed a substantial risk of serious harm") (citation omitted).  Second, and perhaps more crucially, the Complaint lacks any allegations that suggest Defendants White, Long, or Dorset knew that Ferreer had been assaulted or had knowledge of the conditions of Ferreer's confinement in SFCC's RHU.  Thus, the Complaint does not allege that these Defendants "recognized a substantial risk or harm," let alone that their responses to any such risk were constitutionally inadequate.  *See Cleveland*, 372 F.3d at 303.  Accordingly, Claim Five will be DISMISSED.

### C.  Claim Six – False Disciplinary Charge (Defendant Floreska)

In Claim Six, Ferreer alleges that Defendant Floreska violated his rights under the Fourteenth Amendment by "filing a false disciplinary offense report/charge" against him.  Compl. 11.  This claim will be dismissed because "a false disciplinary charge cannot serve as the basis for a constitutional claim."  *Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)).  Therefore, "[a] prisoner does not have a constitutionally guaranteed immunity from being falsely accused" of a disciplinary charge.  *See Carlton v. Jackson Cnty. Ct.*, No. 88-2255, 1989 WL 56525, at *1 (6th Cir. May 31, 1989) (citing *Freeman*, 808 F.2d at 951; *Baker v. McCollan*, 443 U.S. 137, 146 (1979)).  Instead, "the Constitution merely guarantees that prison inmates will 'not . . . be deprived of a protected liberty interest without due process of law.'"  *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (alteration in original) (citation omitted) ("[T]he key inquiry in assessing an allegation that an inmate has been found guilty of false disciplinary charges is whether or not the prison has provided the inmate with the minimum procedural due process protections guaranteed by the Fourteenth Amendment.").

Here, the Complaint offers only the vague and conclusory assertion that Defendant Floreska issued a false charge; it does not identify the nature of the alleged charge or the date on

which it was filed, let alone allege that Ferreer was deprived of a protected liberty interest without the minimum due process protections guaranteed under the Fourteenth Amendment. Accordingly, Claim Six will be DISMISSED.

### D. Claim Seven – Transfer to ACC (Defendants White, Long, Dorset)

In Claim Seven, Ferreer asserts that Defendants White, Long, and Dorset violated his rights by "conspir[ing] to . . . transfer him from SFCC to ACC without a proper [hearing] and property." Compl. 8. Although this allegation is not entirely clear, based on the wording, it appears that Ferreer intended to raise an independent conspiracy claim in addition to a due process claim. As explained below, however, the Complaint fails to state a viable claim under either theory.

1. <u>Conspiracy</u>

To state a claim of conspiracy under § 1983, a plaintiff must allege that the defendants acted "jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Glassman v. Arlington Cnty.*, 628 F.3d 140, 150 (4th Cir. 2010) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)) (alteration in original). The plaintiff must state facts that, if taken as true, would establish that each member of the alleged conspiracy shared the same conspiratorial objective, that they reached a mutual understanding to try to "accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 421. Allegations of conspiracy that amount to nothing more than "rank speculation and conjecture" are not sufficient. *Id.* at 422.

Here, the Complaint fails to allege that Defendants White, Long, and Dorset came to a mutual understanding to transfer Ferreer from SFCC to ACC. Even if it had, for the reasons stated below, Ferreer's transfer to ACC was not violative of due process, and the Complaint therefore fails to describe any conspiracy that "resulted in [the] deprivation of a constitutional right."

13

*Glassman*, 628 F.3d at 150 (alteration in original) (citation omitted). For these reasons, the conspiracy component of Claim Seven will be DISMISSED.

    2. Due Process

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). A liberty interest may arise from the Constitution itself, or from state laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 220–21 (2005).

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "[C]hanges in a prisoner[']s location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his [or her] original sentence to prison. . . ." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). The Due Process Clause does not "in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system." *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

Demonstrating the existence of a state-created liberty interest requires a "two-part analysis." *Prieto v. Clarke*, 780 F.3d 245, 249 & n.3 (4th Cir. 2015) (quoting *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000)). First, a plaintiff must make a threshold showing that the deprivation amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 484, 487 (1995); *see Puranda v. Johnson*, No.

3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citing cases).[5] If the nature of the restraint the plaintiff challenges meets either prong of this threshold, the plaintiff must next show that Virginia's statutory or regulatory language "grants its inmates . . . a protected liberty interest in remaining free from that restraint." *Puranda*, 2009 WL 3175629, at *4 (alteration in original) (quoting *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000)).

Here, the Complaint fails to allege any facts to suggest that Ferreer's transfer from SFCC to ACC imposed an atypical and significant hardship. It equally fails to identify "any Virginia statutory or regulatory language that gives rises to a protected liberty interest in his [avoiding] transfer to [ACC]. . . ." *Vicars v. Clarke*, No. 7:20cv00152, 2021 WL 276168, at *4 (W.D. Va. Jan. 27, 2012) (citations omitted). Because Ferreer does not enjoy a protected liberty interest in avoiding transfer to ACC, he cannot state a due process claim related to the procedures that led to that transfer. The due process component of Clam Seven will therefore be DISMISSED.

### E. Claims Eight & Nine – Destruction of Property (Defendants Waller and Farina)

#### 1. Claim Eight – First Amendment

In Claim Eight, Ferreer asserts that Defendants Waller and Farina violated his rights under the First Amendment when they retaliated against him by destroying his personal property. Compl. 2, 6–7, 9. "To state a colorable First Amendment retaliation claim, a plaintiff must allege

---

[5] With respect to the *Sandin* threshold analysis, the Court must first "determine what the normative 'baseline' is: what constitutes the 'ordinary incidents of prison life' for this particular inmate?" *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015) (citing *Prieto*, 780 F.3d at 253). Second, "with the baseline established, [the Court] determine[s] whether the prison conditions impose atypical and substantial hardship in relation to that norm." *Id.* (citing *Prieto*, 780 F.3d at 254). For example,

> both the U.S. Supreme Court and the Fourth Circuit Court of Appeals have recognized that inmates may have a constitutionally protected liberty interest in avoiding assignment to a "Supermax" prison, *see Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005); *Shaw v. Foreman*, 59 F.4th 121, 127 (4th Cir. 2023), this right is based on the atypical and significant hardship imposed by the particular institutions.

*Johnson v. Chaffin*, No. 7:23cv00229, 2024 WL 3555379, at *4 (W.D. Va. July 25, 2024), *aff'd*, No. 24-6858, 2025 WL 800236 (4th Cir. Mar. 13, 2025).

that (1) he engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendants' conduct." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (citations omitted) (internal quotation marks omitted).

Here, the Complaint does not identify any protected First Amendment activity to support Ferreer's First Amendment retaliation claim. It therefore necessarily also fails to allege any "causal relationship" between his protected activity and Defendants' conduct. *Shaw*, 59 F.4th at 130. Thus, the Complaint does no more than describe a "naked allegation[] of reprisal," not one "taken in response to the exercise of a constitutionally protected right." *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). Accordingly, the Complaint fails to state a First Amendment retaliation claim, and Claim Eight will be DISMISSED.

2. <u>Claim Nine – Due Process</u>

In Claim Nine, Ferreer asserts that Defendants Waller and Farina violated his rights by destroying his property without first providing him adequate due process. Compl. 2, 7. The loss of Ferreer's personal property fails to implicate due process considerations because Virginia's provision of adequate post-deprivation remedies forecloses such a claim. *See Hudson v. Palmer*, 468 U.S. 517, 533, 534–35 (1984); *Wilson v. Agboola*, No. 3:22cv665 (DJN), 2023 WL 7545220, at *2 (E.D. Va. Dec. 13, 2023) (citations omitted). Under the Virginia Tort Claims Act, Virginia has waived sovereign immunity for damages for "negligent or wrongful" acts of state employees acting within the scope of their employment. Va. Code Ann. § 8.01-195.3. The United States Court of Appeals for the Fourth Circuit has held that the Virginia Torts Claim Act and Virginia tort law provide adequate post-deprivation remedies for torts committed by state employees. *See Wadhams v. Procunier*, 772 F.2d 75, 78 (4th Cir. 1985) (finding inmate's recovery in federal court

16

for deprivation of liberty foreclosed, because "Virginia provides adequate tort remedies for post-deprivation compensation"). Because the availability of tort action in state court fully satisfies the requirements of a meaningful post-deprivation process, Ferreer cannot state a claim for the loss of his personal property under the Fourteenth Amendment. *See Jordan v. Rodriguez*, No. 3:11CV193, 2013 WL 4759247, at *2–3 (E.D. Va. Sept. 4, 2023); *Henderson v. Commonwealth*, No. 7:07-cv-00266, 2008 WL 204480, at *10 n.7 (W.D. Va. Jan. 23, 2008). Accordingly, Claim Nine will be DISMISSED.

### F. Claim Ten – Negligence (Undefined Defendants)

In Claim Ten, Ferreer broadly alleges that Defendants acted negligently. Compl. 2. He does not, however, allege the specific acts or omissions on which he bases this claim or even identify the Defendants he believes to have acted negligently. The Complaint does not offer even a "formulaic recitation of the elements" of a negligence claim, let alone assert facts to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, Claim Ten will be DISMISSED.

### G. Claim Eleven – Termination from Employment (Defendant Perez)

In the affidavit accompanying the Complaint, Ferreer alleges in passing that, at the behest of Defendants White and Dorset, Defendant Perez terminated his employment at SFCC. Pl.'s Aff. 1. This is the only allegation raised against Defendant Perez, and the Court therefore assumes that Ferreer's termination was the intended factual basis for any claim against Perez. The most logical legal foundation for any such claim is the Fourteenth Amendment's Due Process Clause. Because, however, Ferreer does not enjoy a protected interest in prison employment, this claim must be DISMISSED. *See Robles v. Sturdinvant*, No. 7:14-CV-00070, 2014 WL 4853409, at *1 (W.D. Va. Mar. 27, 2014) (citing *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50–51 (5th Cir.

1995); *Coakley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989); *Altizer v. Paderick*, 569 F.2d 812 (4th Cir. 1978); *Alley v. Angelone*, 962 F. Supp. 827, 834 (E.D. Va. 1997)), *aff'd*, 583 F. App'x 129 (4th Cir. 2014).

### IV.   CONCLUSION

For the foregoing reasons, the Motion to Dismiss (ECF No. 10) will be GRANTED, and all claims raised against all Defendants except for Defendant Floreska and "Unknown Staff" will be DISMISSED. The Court will direct the United States Marshals Service to serve Defendant Floreska at the address recently provided by the Attorney General for the Commonwealth of Virginia. If service is successful, Claims One and Two will be permitted to proceed against Defendant Floreska.

An appropriate Order will accompany this Memorandum Opinion.

                                                    /s/  
                                  Roderick C. Young  
Date: <u>February 2, 2026</u>                United States District Judge  
Richmond, Virginia